Christy **WILLIAMSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 07A01–0210–PC–393.

Court of Appeals of Indiana.

Oct. 28, 2003.

Rehearing Denied Jan. 8, 2004.

Taffanee Woods–O'Neal, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Christy Williamson appeals the denial of his petition for post-conviction relief. We affirm.[1]

### Issue

The sole issue we address is whether the post-conviction court erred in concluding that Williamson's appellate counsel was not ineffective.

### Facts

On December 24, 1996, a fire started in a gift shop owned by Williamson. The shop was located within a mall in Nashville. The fire eventually caused the entire mall structure to collapse, destroying the property of five other individuals or businesses. Each of these five individuals or businesses suffered over $5,000 in damages. A fire investigator opined that the fire had no accidental ignition source and was the result of arson. Williamson was charged with, convicted of, and sentenced for five counts of arson as Class B felonies.

Williamson directly appealed his convictions. After filing a brief on October 20, 1999, Williamson's appellate attorney sent a detailed letter explaining why he had raised the two issues he had raised, specifically challenging the admission of an audiotape of a fire investigator's interview of Williamson and the trial court's response to a jury question, while not raising other issues. The attorney explicitly opined that Williamson's five arson convictions did not "merge." On April 28, 2000, this court affirmed Williamson's convictions in a memorandum decision. *Williamson v. State*, No. 07A01–9812–CR–453, 727 N.E.2d 1129 (Ind.Ct.App. Apr. 28, 2000). Our supreme court originally granted transfer, but later determined that transfer was improvidently granted.

On June 13, 2000, Williamson's appellate attorney wrote another letter to him explaining that a decision handed down by this court on April 20, 2000, "can be relied upon to argue that Richardson [v. State] does provide a basis to have all but one of your arson convictions vacated and set aside [on double jeopardy grounds]." Post–Conviction Ex. 1. That decision was *Belser v. State*, 727 N.E.2d 457 (Ind.Ct. App.2000), *trans. denied.* Nevertheless, the attorney also stated that when he had filed Williamson's brief, he did not believe that *Richardson* supported a double jeopardy claim in Williamson's case.

On April 3, 2002, Williamson filed a petition for post-conviction relief, alleging that his appellate counsel was ineffective for not arguing that his five convictions for arson arising out of one fire constituted double jeopardy. On August 8, 2002, the post-conviction court concluded that Williamson received effective assistance and denied his petition for relief. Williamson now appeals.

### Analysis

Williamson presents his argument that the five arson convictions represent a double jeopardy violation both as a freestanding claim of error and as an inef-

1. Williamson's request for oral argument is hereby denied.

fective assistance of appellate counsel claim. However, issues available but not raised on direct appeal are waived in a subsequent post-conviction relief proceeding. *Allen v. State,* 749 N.E.2d 1158, 1163 (Ind.2001), *cert. denied,* 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). "[C]omplaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Because Williamson does not argue that the double jeopardy issue was demonstrably unavailable at the time of his appeal, we will only address his claim that he received ineffective assistance of appellate counsel.

A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Wesley v. State,* 788 N.E.2d 1247, 1250 (Ind.2003). A petitioner appealing from the denial of post-conviction relief stands in the position of one appealing a negative judgment. *Id.* As such, the petitioner must convince the court on appeal that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.*

Defendants are constitutionally entitled to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985); *Stevens v. State,* 770 N.E.2d 739, 760 (Ind.2002), *cert. denied.*

> Appellate ineffectiveness claims are evaluated under the *Strickland* standard of conduct falling below professional norms and resulting in prejudice such that our confidence in the outcome is undermined. As for challenges to an appellate counsel's strategic decision to include or exclude issues, courts should be particularly deferential "unless such a decision was unquestionably unreasonable." To prevail on a claim of ineffective assistance of appellate counsel, a defendant must "show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." Deciding which issues to raise on appeal is one of the most important strategic decisions of appellate counsel. Appellate counsel is not deficient if the decision to present "some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." Even if counsel's choice is not reasonable, to prevail, petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different. An appellate ineffectiveness claim challenging the quality of counsel's actual presentation of a claim must "overcome the strongest presumption of adequate assistance." If the claimed issues were presented by appellate counsel and analyzed by an appellate court, relief will only be afforded when the "appellate court is confident it would have ruled differently."

*Stevens,* 770 N.E.2d at 760 (internal citations omitted).

On October 1, 1999, nineteen days before Williamson's appellate attorney filed his brief, our supreme court decided *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). Immediately recognized as a landmark decision, the opinion set forth a new

test for analyzing double jeopardy claims under Article I, Section 14 of the Indiana Constitution. It held:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* at 49. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy using the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* at 53.

The months immediately following *Richardson* saw the vacation of a number of convictions on double jeopardy grounds using the "actual evidence" test, where such convictions would not have been vacated previously. Most relevant to Williamson's case, on April 20, 2000, this court decided *Belser v. State*, 727 N.E.2d 457 (Ind.Ct.App.2000), *trans. denied.* There, we applied *Richardson* to a scenario in which the defendant was convicted of five counts of arson. One count alleged that the defendant knowingly damaged another person's dwelling by fire, which is a Class B felony under Indiana Code Section 35–43–1–1(a)(1). The other four counts alleged that the defendant knowingly damaged the property of another by fire under circumstances that endangered human life, specifically, the lives of four separate people, which act is also a Class B felony under Indiana Code Section 35–43–1–1(a)(2). We first held that under the "statutory elements" test, the defendant

could be convicted of both damaging another's dwelling by fire and one count of damaging another's property under circumstances that endangered human life, as each charge required proof of at least one essential element not contained in the other. *Belser,* 727 N.E.2d at 461. However, we also held, under the "statutory elements" test, that the defendant could not be convicted of multiple counts of damaging the property of another under circumstances that endangered human life based on endangerment to separate persons, because it was "not necessary that the State show endangerment to each particular person to convict Belser of arson as long as it provides proof of 'circumstances that endanger human life.'" *Id.* We further held, under the "actual evidence" test, that the defendant could only be convicted of one count of arson total "based upon the intentional setting of one fire." *Id.* at 462.

Williamson contends *Belser* and *Richardson* should have been argued by appellate counsel as bases for vacating all but one of his arson convictions. However, we observe that *Belser* was not decided until well after Williamson's appellate attorney filed his brief. For purposes of ineffective assistance of appellate counsel claims, we judge the reasonableness of appellate counsel's strategic decisions based upon precedent that was available at the time the brief was filed. *See Bieghler v. State,* 690 N.E.2d 188, 197 n. 6 (Ind.1997); *Mason v. Hanks,* 97 F.3d 887, 897 (7th Cir. 1996). Thus, we will look only to the state of the law as of October 20, 1999, in determining whether appellate counsel made a reasonable strategic decision by not making a double jeopardy argument on Williamson's behalf.

We find one pre-*Richardson* case that might have supported a double jeopardy argument in Williamson's favor. This court held in *Alexander v. State,* 600

N.E.2d 549, 555 (Ind.Ct.App.1992), that double jeopardy precluded the defendant from being convicted of eight separate criminal mischief counts based upon damage to the property of eight different parties caused by a single fire. However, the opinion provides no analysis that explains the reason for this holding and the case it cites as support for this proposition, *Swafford v. State*, 498 N.E.2d 1188, 1191 (Ind. 1986), is not on point. Therefore, the value of *Alexander* as precedent supporting a double jeopardy argument in Williamson's case would legitimately have been suspect in October 1999.

We also observe that in 1986, this court held that a defendant could only be convicted of one count of arson based upon the burning of a single dwelling. *Martin v. State*, 488 N.E.2d 1160, 1162 (Ind.Ct. App.1986). Our reason for this conclusion was that the dwelling was either owned entirely by one person, or at most owned entirely by one person subject to a bank mortgage. *Id.* We contrasted the result in *Martin* to a decision by our supreme court that had held a defendant could be convicted of two counts of robbery where he had taken property from a store and the personal property of a store clerk. *Id.* (citing *Lash v. State*, 433 N.E.2d 764, (Ind. 1982)). Thus, we believe *Martin* and its analysis reasonably can be read as precluding multiple arson convictions where only one person's property is damaged or destroyed, but allowing them if multiple victims are involved.

On June 23, 1999, this court decided *Russell v. State*, 711 N.E.2d 545 (Ind.Ct. App.1999), *trans. denied*. Although decided shortly before *Richardson*, *Russell* seems to have anticipated that decision somewhat in that the opinion recognizes a historical basis for the proposition that the analysis for double jeopardy claims under the Indiana Constitution should be and is different from federal double jeopardy analysis. We held that courts analyzing a state constitution double jeopardy claim based upon multiple punishments should "look beyond the elements of the crimes and view the charging instruments, the jury instructions, and the proof at trial." *Id.* at 550. We then held the defendant could not be convicted and sentenced for both arson and reckless homicide, where the defendant was alleged in the arson charge to have endangered the life of the same person whom he also was alleged in the reckless homicide charge to have killed. "[T]wo sentences were imposed for the same injurious consequences, *to the same victim*, during a single confrontation.... Accordingly, Russell is entitled to relief on double jeopardy grounds employing the Indiana Constitution and its separate analysis." *Id.* at 551 (emphasis added). Thus, this court, using a quasi-*Richardson* analysis, vacated the defendant's reckless homicide conviction. In doing so, however, we used language indicating that a scenario involving a single criminal act that results in harm to *multiple* victims would not raise double jeopardy concerns.

A number of double jeopardy cases decided before *Richardson* paralleled *Russell:* "The imposition of two sentences for the same injurious consequences which were sustained *by the same victim* and inflicted by the defendant's singular act violatives [sic] both federal and state double jeopardy prohibitions." *Hansford v. State*, 490 N.E.2d 1083, 1089 (Ind.1986) (emphasis added). In *Randall v. State*, 455 N.E.2d 916, 931–32 (Ind.1983), the court held the defendant could properly be convicted of five counts of confinement arising out of a single incident where five persons were confined. In *Richardson* itself, Justice Sullivan concurred in Justice Dickson's lead opinion, but also stated that he was "unwilling" to extend double jeop-

ardy relief beyond those situations in which our supreme court historically had done so: where multiple punishments were imposed "upon a defendant who commits two crimes at the very same time *against the same victim.*" *Richardson,* 717 N.E.2d at 55 (Sullivan, J., concurring) (emphasis added). Justice Boehm, joined by Justice Selby, concurred in result only in *Richardson* on the basis that the Indiana Constitution Double Jeopardy Clause applied only to subsequent prosecutions for the same offense, not to multiple convictions arising out of a single act. He did agree that common law and statutory considerations may preclude multiple punishments for a single act, but also stated: "Under current law, everyone seems to agree that it must be possible to charge a person who kills two people with two murders." *Id.* at 67 (Boehm, J., concurring). As for Justice Dickson's "actual evidence" test, nothing in the lead opinion suggests that application of that test would necessarily prohibit multiple convictions in a case involving a single act but harm to multiple victims.

Later applications of the *Richardson* "actual evidence" test clearly indicate that, in fact, it does not prohibit multiple convictions for a single criminal act where multiple victims were harmed thereby. In 2002, our supreme court considered whether a defendant could be convicted of one count of arson and three counts of felony murder based upon three deaths and one bodily injury that arose out of one fire. *Bald v. State,* 766 N.E.2d 1170, 1172 (Ind. 2002). First, our supreme court noted its recent clarification of the "actual evidence" test and that it does not prohibit multiple convictions where "the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all,* of the essential elements of a second offense." *Id.* (quoting *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002) (emphasis added in *Bald* )). It then concluded that because the Class A arson conviction required proof of one person's injury and each felony murder conviction required evidence of a separate victim's death, "each conviction required proof of at least one unique evidentiary fact" and there was no double jeopardy violation under the "actual evidence" test. *Id.* The court also noted that situations in which separate victims are involved "has been a scenario that does not constitute double jeopardy." *Id.* at 1172 n. 4 (citing *Richardson,* 717 N.E.2d at 56 (Sullivan, J., concurring)). *Cf. also Burnett v. State,* 736 N.E.2d 259, 263 n. 3 (Ind.2000) (holding that multiple confinement convictions do not violate double jeopardy where there are multiple victims), *overruled on other grounds by Ludy v. State,* 784 N.E.2d 459 (Ind.2003).

█ Therefore, we conclude pursuant to *Bald* that Williamson's five arson convictions do not violate Indiana's Double Jeopardy Clause, in that each charge in the information names a different victim whose property worth at least $5,000 was destroyed by the blaze that Williamson started, and each conviction required unique proof with respect to each victim.[2] Furthermore, we conclude that Williamson's appellate counsel made a reasonable strategic decision not to pursue a double jeopardy claim at the time of his direct appeal, notwithstanding the advent of the *Richardson* "actual evidence" test, the result in *Alexander,* and whatever specula-

---

**2.** Although *Bald* was discussed and relied upon by the post-conviction court, Williamson's appellate brief contains no argument that it is legally distinguishable from William-son's case, or for that matter any reference to the case at all. Williamson also filed no reply brief responding to the State's argument that *Bald* is directly on point in this case.

tive possibility existed that we might have ruled in Williamson's favor in the spring of 2000. The bulk of precedent available to counsel when he filed his brief would have led to a reasonable conclusion that double jeopardy is not implicated where a defendant is convicted of multiple crimes based upon the commission of a single act that results in harm to multiple victims.[3] Such a conclusion reached in October 1999, moreover, would be proven correct by the *Bald* decision in 2002. We hold that appellate counsel's conduct did not fall below reasonable professional norms when he failed to make a double jeopardy argument on Williamson's behalf.

### Conclusion

Williamson has not demonstrated that he received ineffective assistance of appellate counsel because he failed to prove that counsel made an unreasonable strategic decision in not making a double jeopardy argument, based upon precedent available at the time counsel filed his brief. Additionally, the wisdom of this strategic choice is supported by the fact that current precedent of our supreme court clearly allows multiple criminal convictions arising out of a single act of arson where multiple victims were involved. We affirm the denial of post-conviction relief.

Affirmed.

DARDEN, J., and MAY, J., concur.

---

3. This assumes, of course, that the defendant had the required mens rea with respect to each victim. *See Kelly v. State*, 527 N.E.2d 1148, 1157 (Ind.Ct.App.1988) (Sullivan, J., concurring).